62 A.3d 942

ROLAND JACOBSEN AND ELAINE JACOBSEN, HIS WIFE, GERALDINE GERNERT AND JOHN GERNERT, HER HUSBAND, JACQUELINE TUTTLE AND JAMES TUTTLE, HER HUSBAND, ROBERT AGNESE, PAULA BUTTERFIELD, HELE CIAVARELLA (DECEASED) AND PHILIP CIAVARELLA, HER HUSBAND, GRACE COBB AND HARVEY COBB, HER HUSBAND, BRIGIDA COLELLA, EDWARD COLUCCI AND SOPHIE COLUCCI, HIS WIFE, ARLENE D'AGOSTINO AND VITO D'AGOSTINO, HER HUSBAND, CAROL DAISY AND STEVEN DAISY, HER HUSBAND, MAUREEN DECORSO, PATRICIA EDWARDS AND ROBERT EDWARDS, HER HUSBAND, JOHN GIOIA (DECEASED) AND JEAN GIOIA, HIS WIFE, MAUREEN GODINO AND RICHARD GODINO, HER HUSBAND, DEBBIE GRAHAM AND DONALD GRAHAM, HER HUSBAND, EDWARD GUENTHER AND GWENDOLYN GUENTHER, HIS WIFE, MARY HOLMES AND MICHAEL HOLMES, HER HUSBAND (DECEASED), LISA HUMMEL AND FORREST HUMMEL, HER HUSBAND, JAMES LYNCH, AS EXECUTOR TO THE ESTATE OF JANE LYNCH, DIANA MACINTOSH AND RAYMOND FAZZI, HER HUSBAND, KENNETH MCCAULEY AND LINDA MCCAULEY, HIS WIFE, ANITA MEKITA, JUDITH PETRUCELLI AND JOSEPH PETRUCELLI, HER HUSBAND, DOMINICK RICCIO (DECEASED) AND ANTOINETTE RICCIO, HIS WIFE, THERESA SHEEHAN, KAREN SMITH AND WAYNE GILES, HER HUSBAND, NANCY STIO, SANDRA STREIFER AND JACK STREIFER, HER HUSBAND, ANNETTE THOMPSON AND MATHEW THOMPSON, HER HUSBAND, THOMAS TUORTO AND ANN TUORTO, HIS WIFE, JUDITH WATERSTRADT (DECEASED), ARLENE KRAJEWSKI, PATRICIA MAGLIONE AND ANTHONY MAGLIONE, HER HUSBAND, ANN RAMISTELLA, AS EXECUTRIX TO THE ESTATE OF LOUIS RAMISTELLA, PAULA LERICHE AND ALBERT LERICHE, HER HUSBAND, EDWARD SAPARATA AND FRANCIS SAPARATA, HIS WIFE, WALTER NOYES AND JOSEPHINE NOYES, HIS WIFE, DORIS MERIZIO, CARMEL ROBERTSON AND DELWYN ROBERTSTON, HER HUSBAND, DOROTHY KALIVAS, AS EXECUTRIX TO THE ESTATE OF GEORGE NATALINE, DOMINICK MANCINI AND ANGELA MANCINI, HIS WIFE, GILBERT SUAREZ, JOAN SANCHIRICO AND RONALD SANCHIRICO, HER HUSBAND, RICHARD COLE (DECEASED)

AND JOAN COLE, HIS WIFE, HARRY J. HALEY, SR., MARSHA BRANDT, ON BEHALF OF MARGARET BRANDT, DENISE BRENNAN AND RICHARD MILLS, HER HUSBAND, ANTHO-NY ACQUAVIVA, DAVID J. LUPPKE, AS EXECUTOR TO THE ESTATE OF DAVID C. LUPPKE, MARY HOOLAHAN, GER-TRUDE REIGER, MARY SHARON MOORE, CONSTANCE M. CLARK, DOUGLAS SMITH, GREGORY NIMETZ, ROBERT AN-GELLELLA AND DEBORAH ANGELLELLA, HIS WIFE, BRI-AN HARTMANN, AS EXECUTOR TO THE ESTATE OF MARGA-RET HARTMANN, ANN DELVECCHIO, MARY PORCELLINI, AS EXECUTRIX TO THE ESTATE OF ROBERT PORCELLINI, AND MARY PORCELLINI, MARIA OSBORNE, MARYROSE SEAVEY, PLAINTIFFS, v. PARVEZ DARA, M.D.; PARVEZ DARA, M.D., P.A.; ONCOLOGY ASSOCIATES OF OCEAN COUN-TY, LLC; CENTER FOR ADVANCED RADIATION ONCOLOGY; BARBARA P. SCHNEIDER, M.D.; GRACE BYRNES, R.N., SU-ZANNE MALTA, R.N.; BRENDA PERCEY, R.N., DANIELLE YOUMANS, L.P.N., COLLEEN BAIER; FELICIA JOHNSON; DANA FRIEDALLA, JOHN DOES 1–5; (FICTITIOUS NAMES OF HEALTHCARE PROVIDERS WHO PARTICIPATED IN THE CARE OF THE PLAINTIFFS DURING THE TIME PERIOD WHILE THEY WERE PATIENTS OF PARVEZ DARA, M.D.) AND ABC CORPORATIONS 1–5 (FICTITIOUS NAMES OF MED-ICAL GROUP, PRACTICE, ENTITY OR BUSINESS OF WHICH ANY DEFENDANT WAS AN EMPLOYEE), DEFENDANTS.

Superior Court of New Jersey
Law Division
Ocean County

Decided September 16, 2011.

*Manuel J. Almeida, Jr.* for plaintiffs (*Rudolph & Kayal PA,* attorneys).

*Deborah S. Baird* for defendants (*Eckert Seamans Cherin & Mellott, LLC,* attorneys).

GIZINSKI, J.S.C.

BACKGROUND

This is a medical malpractice case commenced by plaintiffs Roland and Elaine Jacobsen on July 9, 2009. Plaintiffs have amended their complaint eight times, adding additional plaintiffs

in each amended complaint. With the filing of the eighth amended complaint, the total number of plaintiffs involved in the litigation has reached ninety. This matter, however, is not being tried as a class action.

On April 26, 2011, plaintiffs filed an offer of judgment pursuant to *Rule* 4:58–1 to –6 of $3,000,000. Pursuant to *Rule* 4:58–1(b), the ninety-day period for defendants to respond to the offer of judgment expired on July 25, 2011.

Immediately following the caption, the offer of judgment states, "Pursuant to *Rule* 4:58–1 the above named plaintiffs, hereby offer to take judgment in the following amount: $3,000,000." Plaintiffs and defendants agree that the $3,000,000 number is a single, unallocated offer meant to satisfy the claims of all ninety plaintiffs.

Defendants now move to strike plaintiffs' offer of judgment. They assert that *Rule* 4:58–4 only allows for a "single unallocated offer" in situations where a plaintiff has joined another plaintiff "for the purpose of asserting a *per quod* claim."

Plaintiffs oppose defendants' motion, arguing that the case of *Wiese v. Dedhia,* 354 *N.J.Super.* 256, 806 *A.*2d 826 (App.Div.2002) allows multiple plaintiffs to file a single, aggregate offer of judgment as to all of their claims.

In the alternative, plaintiffs submit that they should be permitted to file amended individual offers of judgment that would be effective as of the offer of judgment's original filing date.

ANALYSIS

The rules governing offers of judgment, as set forth in *Rules* 4:58–1 to –6, were "designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement...." *Crudup v. Marrero,* 57 *N.J.* 353, 361, 273 *A.*2d 16 (1971). To fulfill its purpose, the rule "imposes financial consequences on a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment." *Schettino v. Roizman Dev.,* 158 *N.J.* 476, 482, 730 *A.*2d 797 (1999).

*Rule* 4:58–1 permits a party, in anything other than a matrimonial action, and at any time prior to twenty days in advance of the trial date, to offer to take judgment for a sum stated. *Rule* 4:58–2(a) sets forth the consequences of rejecting such an offer:

> If the offer of a claimant is not accepted and the claimant obtains a money judgment, in an amount that is 120% of the offer or more, excluding allowable prejudgment interest and counsel fees, the claimant shall be allowed, in addition to costs of suit: (1) all reasonable litigation expenses incurred following non-acceptance; (2) prejudgment interest of eight percent on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, but only to the extent that such prejudgment interest exceeds the interest prescribed by *Rule* 4:42–11(b), which also shall be allowable; and (3) a reasonable attorney's fee for such subsequent services as are compelled by the non-acceptance.

A. Defendants' Motion to Strike Plaintiffs' Offer of Judgment

 Defendants move to strike plaintiffs' offer of judgment. They assert that *Rule* 4:58–4 only allows for a "single unallocated offer" in situations where a plaintiff has joined another plaintiff "for the purpose of asserting a *per quod* claim."

Plaintiffs oppose defendants' motion, arguing that the case of *Wiese, supra,* 354 *N.J.Super.* 256, 806 *A.*2d 826, allows multiple plaintiffs to file a single, aggregate offer of judgment as to all of their claims. Plaintiffs acknowledge that the issue in the *Wiese* case was whether the plaintiffs, husband and wife, were permitted to file a single offer of judgment or whether each plaintiff was required to file individual offers of judgment. Under these facts, the court permitted a single offer of judgment. *Id.* at 261, 806 *A.*2d 826.

Plaintiffs, however, read *Wiese* too broadly. The holding was clearly limited to spousal plaintiffs. *Id.* at 262, 806 *A.*2d 826 ("[T]he offer of judgment rule's effectiveness ... would be undermined if it were construed to require spousal plaintiffs with interrelated claims, in the absence of any conflict of interest, to submit separate offers of judgment."). The *Wiese* decision specifically warns of the dangers of a more expansive interpretation, noting that "[i]n some cases involving unrelated plaintiffs with

entirely distinct claims, a potential conflict of interest may arise ... construing *Rule* 4:58–1 to include joint settlement offers may deprive the defendant of the ability to evaluate each individual offer separately." *Id.* at 263–64, 806 *A.*2d 826.

Since the *Wiese* decision, the Supreme Court has adopted paragraph (a) of *Rule* 4:58–4, which became effective on September 1, 2004. This rule governs the ability of multiple plaintiffs to make a single, unallocated offer. It states that "[i]f a party joins as plaintiff for the purpose of asserting a *per quod* claim, the claimants may make a single unallocated offer." This paragraph essentially codified the decision in *Wiese*, which, as previously mentioned, held that spousal plaintiffs with interrelated claims can submit a joint offer of judgment for resolution of the entire case.

Other than for *per quod* claimants, *Rule* 4:58–4(a) makes no mention of allowing a single, unallocated offer of judgment for multiple plaintiffs. In *Parish v. Parish*, 412 *N.J.Super.* 39, 56, 988 *A.*2d 1180 (App.Div.2010), the Appellate Division applied an *expressio unius est exclusion alterius* analysis in its interpretation of *Rule* 1:6–2(c)'s requirement of a good-faith attempt to resolve disputes before filing a motion. The Appellate Division held that *Rule* 1:6–2(c)'s requirement could only be imposed in "pretrial discovery" and "calendar motions" because they are the only types of motions expressly mentioned in the rule. The Appellate Division observed that "[i]f the Supreme Court intended to extend these restrictions to cover motion practice universally, it would have done so. The Court purposely did not do so. . . ." *Id.* at 55, 988 *A.*2d 1180.

As in *Parish*, this court finds that the Supreme Court, when adopting *Rule* 4:58–4(a) in 2004, specifically intended not to allow multiple, unrelated plaintiffs to make a single, unallocated offer of judgment. If the Supreme Court intended to allow multiple plaintiffs, other than *per quod* claimants, to make a single unallocated offer of judgment, it would have done so.

This is especially true because *Rule* 4:58–4(a) essentially codifies the holding of *Wiese, supra,* 354 *N.J.Super.* 256, 806 *A.*2d 826. In

the *Wiese* opinion, the Appellate Division specifically warned of the dangers of a more expansive interpretation extending *Rule* 4:58–1 to all cases of multiple plaintiffs. The court stated that in

some cases involving unrelated plaintiffs with entirely distinct claims, a potential conflict of interest may arise in allocating an aggregate settlement award in a way acceptable to all of them. In other situations involving multiple plaintiffs, the aggregate jury award might exceed a rejected joint settlement offer, but the damages awarded to one or more individual plaintiffs might be lower than the amount the defendant would have considered a proper settlement amount for that particular plaintiff.

[*Id.* at 263–64, 806 A.2d 826.]

In those situations, the court found a joint offer of judgment "may deprive the defendant of the ability to evaluate each individual offer separately and may well overstep the purpose of the rule by *forcing* settlement." *Id.* at 263, 806 A.2d 826.

The above-stated concerns are especially relevant in the current matter, which involves ninety plaintiffs, most of whom are unrelated and whose cases are likely different with respect to damages. This stands in great contrast to *Wiese*, which involved only two plaintiffs—husband and wife.

For the foregoing reasons, this court finds it appropriate to grant defendants' motion to strike plaintiffs' offer of judgment.

B. Plaintiffs' Request to Amend Offer of Judgment to Include Allocation

■ Plaintiffs argue that if this court accepts defendants' position, then plaintiffs should be permitted to file amended individual offers of judgment that would be effective as of the offer of judgment's original filing date.

Although plaintiffs' offer of judgment was filed on April 26, 2011, defendants did not send any correspondence or render any objection to the offer of judgment until five days prior to the expiration of the ninety-day period in which defendants could accept or reject. Furthermore, defendants' motion as initially filed was not returnable until August 19, 2011, which was well after the expiration of the ninety-day period for acceptance or

rejection of the offer of judgment. Plaintiffs believe that if their offer of judgment were to be stricken at this late date, they would lose the ability to recover counsel fees for the preceding period and would also be required to incur an additional ninety-day acceptance period. Thus, plaintiffs assert that such amendment of the original offer of judgment should be allowed in the interest of fairness and pursuant to principles of laches and waiver.

█ This court does not agree with plaintiffs. There is no duty for any party to respond to an offer of judgment. There is also no duty to advise plaintiffs that their offer of judgment was invalid under *Rule* 4:58–4(a). Nonetheless, defendants did object to plaintiffs' offer of judgment and advised that it was invalid under *Rule* 4:58 on July 18, 2011.

At all relevant times after their initial offer of judgment, plaintiffs could have withdrawn their original offer under *Rule* 4:58–1(b) and made a valid offer that allocated the $3,000,000 to each individual plaintiff. Other than general principles of fairness, laches, and waiver, plaintiffs have cited no authority that would compel this court to allow them to retrospectively amend their April 26, 2011 offer of judgment.

CONCLUSION

For the foregoing reasons, defendants' motion to strike plaintiffs' offer of judgment is granted.